Yes, good morning. May it please the court, my name is Livia Morales from the Federal Defender's Office on behalf of Mr. Tolbert, appellant with me just a little bit. Sure, with me at council table is David Porter, also from the Federal Defender's Office. I will start with Mr. Tolbert's second claim regarding the speedy trial violation and discuss how the four Barker factors should be weighed in favor of Mr. Tolbert. First, under the first factor is delay. Under this factor, from the time that Mr. Tolbert was first arraigned, which was on October 9, 1996, until his trial actually started, which was July 28, 1997, there was a delay of almost 11 months. According to the district court, the district court's finding, this delay was long enough to establish presumptive prejudice under the Barker's balancing test. According to McNeely, once the presumption of prejudice has been established, the burden then shifts to the government to explain the pre-trial delays, which is the second factor, the cause of the delay. And this is where the district court's finding went wrong. According to the district court, it found that because the continuances were sought by Mr. Tolbert through his attorney, he bared the burden of proving prejudice. And then the court also found that Mr. Tolbert did not demonstrate prejudice because he didn't prove that there were any – there was any oppressive incarceration or any anxiety and concern on his part. The district court made a mistake in shifting the burden of prejudice onto Mr. Tolbert. As stated earlier, as the delay approaches a year, the prejudice – prejudice is presumed. Once prejudice is presumed, the burden then shifts to the government in disproving prejudice. Barker established a balancing test in which the delay is a portion between defense and prosecution. Each factor is used to attribute delay to either – to either party and to determine how much weight should be given to each side. Here, however, the district court failed to assign any such weights and instead shifted the burden of proving prejudice on Mr. Tolbert simply because it found that the delays were caused by his – by him through his attorney. Now, in making the decision – in reaching that decision, the district court relied on Lamb. However, our case is not controlled by Lamb. It's controlled by McNeely. Because in our case, as in McNeely, defense counsel continued the case several times and at least four times over Mr. Tolbert's objections. So this is more similar to McNeely and Lamb. While the continuances were made through his attorney, the defendant in that case had also agreed to waive speedy trial time. Here, Mr. Tolbert objected to – to waiver at least four times. The McNeely court stated that to the extent that Petitioner's counsel waived time, this would not necessarily be attributed to McNeely in that case due to his repeated disagreements with counsel and assertions of his right. So therefore, because the presumption given the length of the delay in this case was already presumed, it was incorrect for the district court to then shift the burden of proving prejudice to Mr. – Mr. Tolbert. Second, the district court made the mistake of attributing the delays to Mr. Tolbert. McNeely also stated that delay attributable to the defendant's own acts or to tactical decisions by defense counsel will not bolster defendant's speedy trial time. So it is not enough that each delay was caused by Mr. Tolbert through his attorney, as the district court found. To blame delay on Mr. Tolbert, the government had to also show – had to show that the cause of the delay was caused through tactical – a tactical decision by his defense attorney. As explained in the – that seemed legitimate aside from those consented to. In fact, the cases were consolidated. The psychological examination seems to me there was a substitution of counsel. This is not a speedy trial act under the Federal law, but it's sort of a Barker-Wingo type of thing. Wouldn't you say that there were some – that if you apply sort of a – this general concept of were the – were there reasons that there were quite a few reasons for the delay? Is that right? Yes. The defense attorney did mention a few – relied on a few reasons for the delay, but he primarily relied on the need to have a psychological evaluation. And that was the one reason he mostly relied upon throughout the case. I think he relied on the fact that he had just been assigned to the case as early as – only the first time on December 12th. I mean, he was familiar with the case, and had he opposed – joined her, as – that's my second point, or the second claim, he wouldn't have had to continue the case so much, so many times. However, as I stated, he primarily relied on the need to have Mr. Tolbert evaluated by a psychologist. And he purported that reason as early as December 12th, 1996. And the psychological evaluation didn't occur until May of 1997, five months later. So – Is there any indication that the defense counsel was responsible for that delay? Maybe they couldn't get an appointment with a doctor or – what is the explanation for that? There is no explanation or no reason in the record explaining that – why the delay occurred. Should that be attributed to the defense counsel, the delay necessarily, just because he asked for the examination? I believe that it should be attributed to his attorney. It should not be attributed to Mr. Tolbert. And it should not be – at least not be weighed against Mr. Tolbert, because the delays – there's nothing in the record showing that the delays occurred due to some tactical decision by the – his attorney. There's nothing on the record to show that. All you have is that he – There's nothing in the record to show it either way, is there? Well, Mr. Tolbert did document in his Marston motion, as well as in the hearing, that he kept waiting and waiting for the psychological evaluation. In fact, the first three times that he agreed to waive time was because he wanted to submit to this psychological evaluation. And yet his attorney never called him, never explained to him what the delays were, why he was waiting so long. And he never visited Mr. Tolbert. So while there's no reason – yeah, it's true that there's no reason showing either way, but at the same time, there's nothing showing that Mr. Ortner was effective or that it was a tactical decision on his part for waiting so long. Well, you've got two separate issues, it seems to me, whether he had ineffective assistance and whether his speedy trial rights were violated. Now, as far as the speedy trial goes, it seems to me he's pretty much stuck with his lawyer because he didn't ask the lawyer for the removal of the lawyer. The lawyer says, I want to go on vacation. That was a reason – if he's going to have that lawyer, the trial's going to be postponed. Was that a wrong reason to postpone the trial because the lawyer wanted to go on vacation? I think that it was. He talked – No, but as far as violation of his rights, he's accepted this lawyer. He doesn't say, please remove this lawyer who wants to go on vacation. Isn't he bound by his lawyer's decision? I need the vacation? Maybe as to the first waiver, but not thereafter. There's four times where he expressly objected to a continuance. And – Why doesn't he ask to remove his lawyer, then? He eventually did. But he didn't. Well, he actually – and as of – I think it was June 1997 when he finally filed a Marston motion arguing that – Yes. So as far as that goes, it's his lawyer's decision. I don't see how you can blame it on anybody else. Well, it's the lawyer's decision to continue the case, but that shouldn't be attributed – the cause of the delay should not be attributed or at least weighed negatively against Mr. Tolbert. Why not? He's bound by – he's got a lawyer. The lawyer's representing him. The state can't do anything about it. I just don't understand that. Well, he's not bound by his lawyer. Now, you can attack the effective representation, but that's a separate issue. Well, as in McNeely – like, this is exactly what happened in McNeely, where the attorney continuously continued the case over and – well, the case was continued several times, and there were times where it appeared that the defendant had waived speedy trial time. The McNeely court said that to the extent that Petitioner's counsel waived time on behalf of the Petitioner, this would not necessarily be attributed to McNeely due to his repeated disagreements with counsel and assertions of his right. And this is exactly what happened here. Mr. Tolbert repeatedly asserted his right to speed trial time. And McNeely is a decision of what court? Of, I believe, the Ninth Circuit, Your Honor. We're trying to decide whether this is a violation of the Supreme Court rule. Well, McNeely analyzes the Supreme Court rule in establishing. I think we're asked to see if there's an actual violation of a Supreme Court precedent. That's the standard, isn't it? Yes, it is. I mean, it appears here that there was. I mean, the – like I said, the – in looking at this factor, it's not about whether it should be – it's a continuum. It's not about blaming it, either attributing the cause of the delay to the defendant or the prosecution, but how much weight it should be given. And because he did object to these continuances, because he did try to remove his attorney, the fact that these continuances – When's the first time he tried to remove him? It was on June 5th. June 5th was when he filed the motion. But he gave – And how much delay happened after that? I think it – well, after the hearing, the judge – it was at that point that the judge refused to grant the defense attorney's request for a continuance over Mr. Tolbert's objections. Prior to that – That was effective, then. He was able to stop the continuance. Right. Yes, Your Honor. I guess the point I'm trying to make is that with – when you compare that factor with the other three factors, the cause of the – the delay – the length of the delay, along with his assertions of the speedy trial rights, and as well as the prejudice that Mr. Tolbert suffered, that factor should not outweigh the other three. With regards to the prejudice that Mr. Tolbert suffered, the district court also – also found that – one moment. The district court found that he failed to meet the burden because he didn't demonstrate oppressive incarceration nor anxiety or concern. First, like I said, it wasn't – he improperly shifted the burden onto Mr. Tolbert to prove prejudice. But second, the record clearly showed that Mr. Tolbert was prejudiced because his anxiety and concern were – was – the record was replete with evidence that Mr. Tolbert suffered from anxiety and concern. Like I said, he asserted his – Very little, if any, evidence about prejudice is there in this record. Well – In any respect. Well, according to – according to the case law, showing anxiety and concern is – is one factor to look at in determining whether the defendant was prejudiced. And here he showed that he was – he did suffer from that. As early as – Everything that's in there is something like he suffered incarceration that was oppressive or what was – what is the evidence of that? But he asserted his speedy trial time of rights from the beginning of – from the beginning. Oh, no, the prejudice. The prejudice was that – well, again, what I'm trying to say is – He didn't lose any witnesses or his defense really wasn't prejudiced, but he suffered some oppressive – some stress, as I recall, was there. Anxiety, yes. There was – he also suffered prejudice in other ways. His trial date was originally scheduled for December 16th, 1996. Had he gone to trial on that date, he was only facing the Blauat burglary, two strikes, and two prior prison terms. And he was also only facing a sentence of 27 years of prison time to life. His trial was then continued two more times. And then, again, in March – on March 10th, 1997, was the third time that the trial was set for. Now, had he gone to trial on that day, Mr. Tolber would have been defending against not only the Blauat burglary, but this time the attempted escape as well as the Null burglary. And this time he was also facing three strikes and two prior prison terms. So not only was he facing – About the claim of ineffective assistance of counsel as far as failing to oppose the consolidation or moving for severance, would you like to address that issue? Sure. Well, first, the trial attorney was unreasonable for failing to oppose Joinder. The district court incorrectly concluded that the attempted escape was relevant to and therefore cross-admissible at the Null burglary to show consciousness of guilt. I would like to point out that the escape charge, which was filed on November 5th, had nothing to do with the Null burglary because the Null burglary was not charged until February 27th, 1997. That was more than four months after Mr. Tolbert's attempted escape. So there's no – there was no way that the – had these two cases been tried separately that any evidence of each case would have been cross-admissible. Second, the prejudicial effect in joining these charges was great. Having heard evidence of the escape side by side with evidence of the burglaries, the jury was then predisposed in finding Mr. Tolbert guilty of one charge simply because – by having found him guilty of the other charges. So trial counsel's failure to oppose Joinder allowed the prosecutor to have the jury listen to all this damaging character evidence regarding Mr. Tolbert's escape – attempted escape. Third, the prejudicial effect was further exacerbating by admitting evidence of Mr. Tolbert – which is part of the fourth claim raised by Mr. Tolbert. The government referred to this jewelry in its opening statement. They also allowed the police officer to testify on the incident. However, there was no evidence presented linking this jewelry to Mr. Tolbert – to Mr. Tolbert and the burglar – and the burglaries. Mr. Null and Ms. Bawa testified. These were the owners of the homes. They both testified, and they never identified the jewelry that Mr. Tolbert was attempting to dispose of. And yet at closing, the prosecutor argued that Mr. Tolbert had stolen the jewelry and had attempted to destroy the evidence. The prejudice was even more egregious when the fingerprint expert also made a reference to the criminal database that was used to identify Mr. Tolbert. For these reasons, it's the cumulative prejudicial effect of allowing the jury to listen to evidence of not only the escape, but also the jewelry that was unconnected to the trial, and as well as the criminal references that sufficiently prejudiced Mr. Tolbert. Did you want to save a little time for rebuttal? Yes, I do. Okay. We'll hear from the State at this time. Thank you. Thank you for your argument, counsel. Ms. Warwick. Good morning. May it please the Court. My name is Tammy Warwick, and I represent the Respondent, Warden Cheryl Plyler. I will start by addressing the speedy trial claim. Under the Barker factors, it is very clear that the district court's decision in upholding the Court of Appeals decision did not, was not an unreasonable application of Supreme Court authority. Based on the length of the delay, it was approximately 10 to 11 months, and the reasons for the delay are what's important here, is that the attorney was trying to pursue the only defense he had to attack the ability to form intent in a case where the evidence was clear under each of the charges. There were fingerprints found. There were eyewitness identifications. It was an uphill battle for this attorney, and there was overwhelming evidence, as well as the fact that this particular petitioner was facing a three-strike sentence for these crimes. And then you look at also the accused's assertion of the right, and by my review of the record, there are only two times that petitioner objected that art can be supported by the record. And the initial time was December 11th, when his counsel was first assigned, and counsel wanted to postpone the trial because of his vacation, but the court denied that request and went ahead and confirmed the trial for December 16th. It wasn't until the next day when the attorney decided further investigation needed to be done for the intent element that the delay to get that psychological examination seems extraordinarily long. Didn't the defense counsel have an obligation to get that job done within some reasonable period of time? Well, Your Honor, again, there is no indication on the record of why there was the delay, but a few-month delay to get a psychological evaluation doesn't seem extraordinarily long, as well as this attorney was preparing for three cases that had been consolidated, and the time was actually shortened by these cases consolidated instead of Mr. Tolbert facing three separate cases in this matter. And so given the fact that counsel came in not from the beginning, the fact that the cases were consolidated and he was trying to what I would consider fight an uphill battle in a case where there was overwhelming evidence attacking intent, and when the psychological report came back, there was no indication there was any problems, and he wanted to go even a step further. Use up all your time on that issue. If you want to add something, you may, but don't use up all your time on that issue, please. Okay. And then the second time he objected was June 5th, and at that time the court did grant the continuance because the court felt that a neurological evaluation was a reasonable request, and counsel specifically stated that Petitioner would be prejudiced if he couldn't pursue this defense, which he considered his only defense. But nonetheless, the trial went to the court July 28th, so that wasn't an extreme delay, and the Morrison hearing was actually Petitioner filed his Morrison motion on June 25th, and it was heard. I'm sorry for interrupting you. What do we make of the fact that when the case came to trial, the lawyer put on no defense? Well, Your Honor, I think he was stripped of his only defense because of the fact that the psychological report came back, no problems. He wasn't allowed to go Petitioner did object to a neuropsychological evaluation to determine if there's any organic disorders. And the fact of the matter is there were fingerprints found, there were eyewitness identifications. That's sort of a two-edged sword, isn't it? And this is the reason I asked the question. The fact that when the case actually came to trial, the defense put on no defense, can't that also suggest that there was absolutely no reason for the delay? I mean, it was not like they were searching for alibi witnesses or DNA testing or anything like that. What was this time used for if, when it came to trial, there was absolutely no defense? Well, Your Honor, the record is unclear as to there's some of the continuances in between, but I think in a case where you're dealing with a Petitioner facing a three-strike sentence, that this attorney, based on the record and trying to get a psychological evaluation, there was not he was trying to pursue whatever he could for this particular person because he was facing a very long sentence for these three crimes. A question about that. In the record, was the trial defense attorney asked to explain what was done with the time? It doesn't appear so. It appears because each time Petitioner waived the time. So whatever may have gone on between Petitioner and his counsel wasn't brought up until June 25th, and that's when Petitioner said, I feel like my rights have been violated. So as far as the Court's concerned, if Petitioner's waiving time and his counsel saying he has to do further investigation, there's no reason for the Court not to believe that they were in the benefit of the Petitioner. Did the trial court, when the defense rested putting on no evidence, ask anything about this? I don't believe so. But I couldn't definitely state that. I couldn't find any. But what about this business of when the fingerprints came in, the representative of law enforcement telling the jury that it came from the, quote, known criminal offender file? Well, the state court as well as the district court found properly that it was a brief reference, there was no indication of his prior criminal history, and that there was a permissible inference because the jury needed to understand how these prints were obtained. And they were obtained through the automated latent print system, and that's how it is, is how the fingerprints are matched. So had they not laid the foundation for that, there certainly couldn't have been an objection or ---- What need was there to describe the label for the database? It was because the expert opinion in matching those fingerprints was based on using that system. So it was to explain the expert opinion. But why do you have to describe that law enforcement chooses to call this database, quote, the known criminal offender file? In explaining how those fingerprints were matched up. I mean, could they have labeled it without fear of error, the people presumed to be guilty file? Well, they just explained briefly, and again, it was a brief reference to the fact that fingerprints are known criminals. So, yes, there was a reference that a jury could draw an inference he had to pass, but it was brief. And in light of the evidence against him, I certainly would submit that it was not prejudicial, that they had fingerprints, that they had the fact that there was eyewitness identification. It certainly didn't render his trial fundamentally unfair as would be required. And as to the issue of severance, the fact that the trial or the trial counsel didn't move to sever, the case clearly fell within the statute, California Penal Code, Section 954. That would have been a losing battle to try to sever those claims. And the fact is that the escape charge was consolidated with the California statute bumps into the Constitution of the United States. You're going to get evidence that's not admitted, is not cross-admissible, like between the two burglaries. In fact, it's of the same class. Should that justify joining those cases? Yes. The first consolidation was the escape charge. If you get ten bank robberies, you could join them because they're the same class? That's how the statute reads, and the Court has great discretion. Would that be due process? Well, the ‑‑ when you look at a different standard here, I think in looking at the ineffective assistance of counsel, you have to look at what he was dealing with with California law. But as far as the ‑‑ which isn't in the brief, but as far as the constitutional claim to whether they could have been severed, Sandoval talks about, which, again, is not in the brief because that wasn't relevant to that claim, but you look at the cross‑admissibility and the underlying strength of each case, which is the same thing that we discussed in our brief about the fact that why there's no prejudice here is that the evidence clearly would have been cross‑admissible. These burglaries occurred within a short period of time. They were very similar. And ‑‑ You mean the evidence of the one burglary would be admissible, cross‑admissible? I don't see that at all. To intent common plan to show that this individual had actually committed the second ‑‑ well, whichever burglary you're in court for. But it would have come ‑‑ it's very likely, and they didn't have to get to that in this because there was no ‑‑ the court didn't have to go that far to analyze it, but he was claiming he didn't do it. And the ‑‑ So if you committed one, you probably committed the other? You can't use it for propensity evidence, but if the crimes are so similar under California law, you can use it to show intent or common plan or identity. And he ‑‑ What was distinctive about ‑‑ weren't they just garden variety burglaries? What was distinctive or unusual where you'd be able to show that it was a common scheme or plan? I think they were both residential burglaries. They were in one situation he put a blanket on the floor to look like to gather the goods, and in another one he put a pillowcase to gather things. I think it's very likely that that may have come in. And the time frame was a very short time frame. There's less than a month between the two. So that wouldn't have been ‑‑ the time frame wouldn't have been a problem for the cross‑admissibility either. And as well as the fact ‑‑ but I think more importantly, it's of the state. Kind of a rule 403 in the California procedures? No, they didn't have to get to that point because the court found that, well, there was no motion to ‑‑ the motion to consolidate the court found they were different offenses of the same class of crime. So it squarely fell within the statute. And then as far as the escape charge, the escape charge was consolidated with the second burglary, which after he was arrested, he was transported for a court proceeding, and that would ‑‑ How would you relate the escape charge, which was unrelated to the second burglary, how would that be cross‑admissible? The escape charge would be connected to the second burglary because he had been arrested for the second burglary, and the escape charge, he was going to court, and he was trying to escape, and the court found that it would be ‑‑ What about the other burglary? Well, once you consolidate ‑‑ I haven't been charged with it yet. I don't think you would have to necessarily have the escape charge be connected with the first one because it was connected with the burglary, and then the burglary was able to be connected with the first crime because of their being of the same class of crimes. But even so, the escape happened after he had committed both of these crimes. But I don't think, as the petitioner has said, that the escape charge necessarily had to relate to the first offense. It related to the second one, and then the second burglary related to the first class of crimes. So I think once the ‑‑ Somewhat attenuated connection? I don't believe so because of the fact that the escape, and based on case law in California that has come down, People v. Valdez, where it said murder charges could be consolidated with escape charges, in a similar situation where someone was going to court and tried to escape, it shows consciousness of guilt. And certainly those would have been cross‑admissible if there were separate trials. And then the first burglary ‑‑ or the second burglary, sorry, was connected with the same class of crimes as the first one. And the underlying ‑‑ and another important point is the underlying evidence in each case was very strong. It wasn't a case where one was weak and then you're joining these two and he was going to be prejudiced in that way. So the council was ‑‑ I think saw the losing battle there with the statute allowing for these cases to be consolidated and didn't make that motion. And, again, the ‑‑ and for due process purposes, you look at the cross‑admissibility and the strength of the underlying case. Dr. Strickland, do you think that council would reasonably be expected to make those motions, to sever and to oppose consolidation rather than just sitting back and let all that occur? If a motion is unavailing or it's meritless and it's not going to go anywhere, council, it's not reasonable or it couldn't be considered deficient performance on his part not to do that. And under Strickland, with a ‑‑ It doesn't sound like it would ‑‑ it's that meritless. Can you address that? Well, given the fact that ‑‑ Go ahead. Well, I think that's besides the question. But if ‑‑ but I think in this situation where he was ‑‑ you're faced with crimes that can be joined under a statute, there was no reason to do that. And certainly under Strickland, with the ADPA, the analysis is not whether this court would come to a different conclusion, but whether the lower courts was an unreasonable application of Strickland. And certainly in no terms can you say that his performance was deficient. Maybe he could have done something or tried to do something, but if it wouldn't have been successful, you can't call that deficient performance that would have affected the outcome of his trial. Could you use up all your time? Go ahead, please. And as to the issue of with the speedy trial, with the burden, when you get to the Barker factors, on the fourth prong is the prejudice factor. And U.S. v. Lamb made it clear that when the delays can be attributed for the benefit of the defense, that the burden is on that defendant to show prejudice. And McNeely doesn't change that decision because in that case, the record was devoid of any reasons for the delays, so it couldn't be attributed to the benefit of the defense, even though his counsel made some of those requests. So it's not at all inconsistent to say that with those two cases, that the burden fell on the defendant in this case. And certainly he didn't show prejudice. He even said he did not need a psychological report, so it's pretty hard, I think, for him to argue. He refused. He didn't want the continuance for further psychological evaluation. And certainly the psychological evaluation didn't show that he was having any problems. And then as far as the most important factor is the impairment of his defense. And it cannot be said that these delays impaired his defense because they were for his benefit in a case where he was facing, again, a three-strike sentence and had three consolidated cases against him. Unless this Court has any further questions, I'll submit. I don't see any. Thank you, counsel, for your argument. Roberta. First, I would like to answer your previous question. Under the AEDPA, this Court can look at Ninth Circuit, the Ninth Circuit interpretation of clearly established Supreme Court law in determining and then therefore look into McNeely in reviewing the first claim, the Speedy Trial claim. Do you think that the decision was contrary to clearly established Supreme Court law as far as it interpreted Strickland in this case? With regards to the Speedy Trial? No, the IAC, Ineffective Assistance of Counsel. Okay. Yes, because first, well, yes. First, based on what I previously said, it's clear that counsel's performance was deficient. First, he continued the case several times for no purposeful reason, no ---- From the consolidation severance. Okay. There was nothing barring Mr. Ortner, the trial attorney, from opposing Joinder. There was strong authority at the time against Joinder. There was also no tactical reason in the record to demonstrate, you know, to show why he failed to oppose Joinder. And the evidence would have been, had he opposed Joinder, he would have succeeded. The evidence was not cross-admissible. The incident ---- A person practicing in California in the California State Court faced with this statute that allows cases of the same class to be joined. Would it be ineffective assistance of counsel not to file these motions? Yes, it would be. From that perspective? It would be ineffective assistance of counsel to not file the motions. Why would that be? Because, well, maybe the two burglaries may have been of the same class, but the escape charge was completely unrelated to the burglaries. The evidence there was also very prejudicial to the defendant, and it was only reasonable for the defense attorney to at least raise an objection, but he didn't. And he would have succeeded had he moved for severance. Okay. You're out of time. Okay. Did you have something else you wanted to add real quickly? No. That's about it. Thank you. Okay. Thank you for your argument. Thank both sides for their argument. The case is argued and will be submitted for decision.
judges: Noonan, Hawkins, Reed